ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST OF TX
FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

2016 FEB 18  PM 4: 57

DEPUTY CLERK_____

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. |
| RICHARD ROBERT CESARIO (01)<br>JOHN PAUL COOPER (02) | **3 - 1 6 C R - 0 6 0 - M** |

## INDICTMENT

The Grand Jury charges:

At all times material to this Indictment:

### General Allegations

### The TRICARE Program Generally

1.      TRICARE was a health care program of the United States Department of Defense (DoD) Military Health System that provided coverage for DoD beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.  Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries.  The Defense Health Agency (DHA), an agency of the DoD, was the military entity responsible for overseeing and administering the TRICARE program.

2.      TRICARE was a "health care benefit program" as defined by 18 U.S.C. § 24(b), that affected commerce, and as that term is used in 18 U.S.C. § 1347.

3.      TRICARE was a "Federal health care program" as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce, and as that term is used in 42 U.S.C. § 1320a-7b(b).

Indictment - Page 1

4.      TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, which were medically necessary and prescribed by a licensed physician. Express Scripts, Inc. (Express Scripts) administered TRICARE's prescription drug benefits.

5.      TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies. If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy. To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

Compounded Drugs Generally

6.      In general, "compounding" is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. Compounded drugs are not FDA-approved, that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. The Texas State Board of Pharmacy regulates the practice of compounding in the State of Texas.

7.      Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient. For example, if a

patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye

or a preservative, a compounded drug can be prepared excluding the substance that

triggers the allergic reaction.  Compounded drugs may also be prescribed when a patient

cannot consume a medication by traditional means, such as an elderly patient or child

who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not

otherwise available.

### CMG RX LLC.

8.     CMG RX LLC. (CMGRX) was a Texas limited liability company formed

in July 2014 that had its principal place of business at 5050 Quorum Drive, Dallas, Texas.

The 'CMG' in CMGRX stands for Compound Marketing Group.  CMGRX primarily

marketed compounded pain and scar creams to current and former members of the U.S.

military and their families on behalf of various compounding pharmacies.  CMGRX

ceased operating in mid-2015 shortly after TRICARE announced changes to its coverage

of compounded drugs.

### The Defendants

9.     **Richard Robert Cesario**, a resident of Plano, Texas, founded, co-owned,

and co-operated CMGRX, and served as its CEO and Treasurer.

10.     **John Paul Cooper**, a resident of Southlake, Texas, co-owned and co-

operated CMGRX, and served as its President and Secretary.

11.     Neither **Cesario** nor **Cooper** had any medical, nursing, or pharmaceutical

licensing or education.

<u>Count One</u>
Conspiracy to Commit Health Care Fraud
(Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

12.     Paragraphs 1 through 11 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

13.     From in or around July 2014, through on or around February 18, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, **Cesario** and **Cooper**, together with coconspirators who are not named as defendants in this Indictment, did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, known and unknown to the grand jury, to violate 18 U.S.C. § 1347, that is, to devise and to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, TRICARE, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, TRICARE, in connection with the delivery of, and payment for, health care benefits, items, and services.

<u>Purposes of the Conspiracy</u>

14.     It was a purpose of the conspiracy for **Cesario**, **Cooper**, and their coconspirators to unlawfully enrich themselves through the submission of claims to Express Scripts for compounded drugs prescribed to TRICARE beneficiaries, which prescriptions had been induced by kickbacks paid to the prescribing physicians, and by kickbacks paid, or promised to be paid, to TRICARE beneficiaries, and to conceal those facts from TRICARE and Express Scripts.

15. It was a purpose of the conspiracy for **Cesario**, **Cooper**, and their coconspirators to unlawfully enrich themselves through the receipt of kickbacks from pharmacies in exchange for the referral of prescriptions for compounded drugs for TRICARE beneficiaries, and to conceal those facts from TRICARE and Express Scripts.

Manner and Means of the Conspiracy

16. The manner and means by which **Cesario**, **Cooper**, and their coconspirators sought to accomplish the purposes of the conspiracy included, among other things:

The Scheme to Defraud

17. **Cesario**, **Cooper**, and their coconspirators devised and executed a scheme to defraud TRICARE by making and receiving payments in connection with the prescription of compounded drugs to TRICARE beneficiaries. These payments included: (a) payments to TRICARE beneficiaries in exchange for filling prescriptions for compounded drugs; (b) payments to physicians in exchange for prescribing compounded drugs to TRICARE beneficiaries; and (c) the receipt of payments by **Cesario**, **Cooper**, and their coconspirators from pharmacies in exchange for referring TRICARE beneficiaries and their prescriptions for compounded drugs to the pharmacies.

18. As part of the scheme to defraud, **Cesario** and **Cooper** employed individuals, who had no medical or pharmaceutical training or licenses, as pharmacy technicians in CMGRX's medical department. These unlicensed technicians received patient referrals from CMGRX marketers in the field. **Cesario** and **Cooper** directed these individuals to use the information provided by the marketers to fill out prescriptions

for compounded medications and then contact Express Scripts to determine whether the formulations would be covered, and if so, how much TRICARE would pay for each prescription. Based on Express Scripts' response, these untrained and unlicensed individuals would adjust the formulation of the prescription and re-contact Express Scripts to see if it would pay more, all in an effort to maximize the amount TRICARE would pay for each prescription, and without any regard for the medical necessity for the prescription.

19. Once the highest-paying formulation for the prescription had been determined, CMGRX employees would send the patient's information and a pre-filled prescription form to a doctor. The doctor was supposed to contact the patient by telephone, sign the prescription, and return it to CMGRX. TRICARE beneficiaries complained to CMGRX employees that these telephone calls from the doctors lasted less than two minutes. **Cesario**, **Cooper**, and their coconspirators frequently skipped this step and used a doctor's signature stamp to complete the prescription, especially for renewal prescriptions after a beneficiary's refills had been exhausted. **Cesario**, **Cooper**, and their coconspirators obtained six signature stamps in its office for one doctor.

20. As part of the scheme to defraud, **Cesario** and **Cooper** directed the prescribing doctor to return the signed prescriptions to CMGRX instead of giving them to the patients directly. This allowed **Cesario** and **Cooper** to choose which compounding pharmacy would fill each prescription—a choice that was not allotted to the patients. This determination was made based on the pharmacies' then-current capacity, and which pharmacy would pay **Cesario** and **Cooper** the most money for the referrals.

21.     As part of the scheme to defraud, CMGRX employees called TRICARE beneficiaries and falsely represented that they were from the prescribing doctor's medical or clinical staff to obtain the beneficiary's approval to authorize as many as five additional months of refills.

22.     As part of the scheme to defraud, physicians wrote prescriptions for TRICARE beneficiaries who resided in states where the physician was not licensed to practice medicine.

### Payment of Kickbacks to TRICARE Beneficiaries

23.     As part of the scheme to defraud, **Cesario**, **Cooper**, and their coconspirators offered to pay, and did pay, TRICARE beneficiaries for obtaining and filling prescriptions for compounded drugs, principally compounded pain creams, scar creams, migraine creams, and vitamins.  **Cesario**, **Cooper**, and their coconspirators offered to pay TRICARE beneficiaries $250 per month for each prescription they obtained through one of their partner pharmacies.

24.     **Cesario**, **Cooper**, and their coconspirators disguised these payments to TRICARE beneficiaries as grants for participating in a medical study that they referred to as the "Patient Safety Initiative" or "PSI Study."  **Cesario**, **Cooper**, and their coconspirators falsely represented that the study was approved by TRICARE and that it was designed to evaluate the safety and efficacy of compounded drugs.  In reality, the PSI Study was not approved by TRICARE, was not overseen by a qualified physician, epidemiologist, or other medical professional, and was not designed to gather any useful scientific data relating to the safety and efficacy of any drugs.

25.     The true purpose of the PSI Study was to compile a list of TRICARE beneficiaries who had filled prescriptions so that **Cesario**, **Cooper**, and their coconspirators could calculate how much to pay the beneficiaries.  To gather this data, **Cesario**, **Cooper**, and their coconspirators instructed TRICARE beneficiaries to log-in to a website once per month, complete a short PSI Study questionnaire or assessment for each prescription they received that month, and upload a picture of each of their prescribed compounded drugs.  Most of the questions in the questionnaire centered on the ordering, packaging, and delivery of the drugs.  Using the information obtained from the PSI Study questionnaires, **Cesario**, **Cooper**, and their coconspirators compiled monthly "payout" lists, consisting of individuals, addresses, and payment amounts.

26.     To disguise the source of the payments to the TRICARE beneficiaries, **Cesario** and **Cooper** created, or directed the creation of, the Freedom From Pain Foundation, a Delaware Corporation, and registered it as a § 501(c)(3) tax-exempt charitable organization.  The Freedom From Pain Foundation was funded entirely by payments from **Cesario** and **Cooper**, or CMGRX accounts controlled by **Cesario** and **Cooper**.  From November 2014 to June 2015, CMGRX, **Cesario** and **Cooper** paid approximately $2,425,750.00 to the Freedom From Pain Foundation.

27.     **Cesario**, **Cooper**, and their coconspirators gave the monthly payout lists to the Freedom From Pain Foundation, and **Cesario** and **Cooper** instructed the Freedom From Pain Foundation to write checks to the TRICARE beneficiaries in amounts indicated on the payout lists.  **Cesario** and **Cooper** shared these expenses equally, each writing a check to Freedom From Pain Foundation for approximately one-half of the total

from each payout list. **Cesario** and **Cooper** wrote "Donation," "Donations," "Donation For Charity," and "Donation-Charity" in the memo section of certain checks to the Freedom From Pain Foundation.

28.     As part of the scheme to defraud, **Cesario**, **Cooper**, and their coconspirators also obtained prepaid debit cards in the names of certain TRICARE beneficiaries, unbeknownst to the beneficiaries, and used those cards to pay the beneficiary's co-pay so that prescriptions could be processed faster by the compounding pharmacies.

Payment of Kickbacks to Prescribing Physicians

29.     As part of the scheme to defraud, **Cesario**, **Cooper**, and their coconspirators offered to pay, and did pay, physicians to write prescriptions for compounded drugs. Physicians were typically paid $60 for each compounded pain or scar cream prescription they wrote and $30 for each compounded vitamin prescription they wrote. The prescribing physicians typically had no prior physician/patient relationship with the TRICARE beneficiaries for whom they wrote prescriptions, and wrote the prescriptions after brief telephone interviews with the patients.

30.     In an effort to disguise their payments to prescribing physicians, **Cesario**, **Cooper**, and their coconspirators funneled these payments through the Freedom From Pain Foundation under the false premise that the physicians were participating in the PSI Study.

## Receipt of Kickbacks from Compounding Pharmacies

31.     As part of the scheme to defraud, **Cesario** and **Cooper** caused CMGX to enter into marketing service agreements with various compounding pharmacies. According to the terms of the marketing service agreements, the compounding pharmacies agreed to pay a percentage of the gross revenue received by the pharmacy for claims generated by CMGRX.  In an attempt to disguise the nature of the payments from the pharmacies, **Cesario** and **Cooper** caused the pharmacies to make these payments as employee wages.  **Cesario** and **Cooper** were not, however bona fide employees of any compounding pharmacy.

## Effect on TRICARE

32.     Had DHA, TRICARE, and Express Scripts been aware that payments were being made to doctors, beneficiaries, and other individuals involved in the submission of claims for reimbursement for compounded drugs as set forth above, the claims would have been denied and not paid.

33.     **Cesario**, **Cooper**, and the coconspirators caused TRICARE to suffer an actual loss of more than $65 million.

All in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347).

Counts Two through Eight
Receipt of Illegal Remuneration
(Violations of 42 U.S.C. § 1320a-7b(b)(1))

34.     Paragraphs 1 through 33 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

35.     From in or around July 2014, through on or around February 18, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, **Cesario** and **Cooper** did knowingly and willfully solicit and receive remuneration directly and indirectly, overtly and covertly, in cash and in kind from compounding pharmacies in return for referring an individual to the pharmacy for the furnishing and arranging for the furnishing of prescription compounded drugs, for which payment may be made in whole or in part under a Federal health care program, namely, TRICARE, each payment forming a separate count:

| Count | Defendant | Pharmacy | Date of Payment | Amount of Payment |
|-------|-----------|----------|-----------------|-------------------|
| 2 | Cesario | 3.P. | 05/04/2015 | $1,414,691.11 |
| 3 | Cooper | 3.P. | 05/04/2015 | $1,414,691.11 |
| 4 | Cesario | F.W. | 04/06/2015 | $623,883.00 |
| 5 | Cooper | F.W. | 04/08/2015 | $623,883.00 |
| 6 | Cesario | T.P. | 05/08/2015 | $353,528.72 |
| 7 | Cooper | T.P. | 05/08/2015 | $353,528.72 |
| 8 | Cesario and Cooper | T.P. | 01/29/2015 | $782,041.94 |

All in violation of 42 U.S.C. § 1320a-7b(b)(1).

Counts Nine through Twelve
Payment of Illegal Remuneration and
Aiding and Abetting Payment of Illegal Remuneration
(Violations of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2)

36.    Paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

37.    From in or around July 2014, through on or around February 18, 2016, in the Dallas Division of the Northern District of Texas and elsewhere, **Cesario** and **Cooper**, aided and abetted by others, and aiding and abetting others, known and unknown to the Grand Jury, did knowingly and willfully offer to pay and did pay remuneration directly and indirectly, overtly and covertly, in cash and in kind to TRICARE beneficiaries in return for purchasing and ordering prescription compounded drugs, services and items for which payment may be made in whole or in part under a Federal health care program, namely, TRICARE, each payment forming a separate count:

| Count | Recipient Beneficiary | Date of Payment | Check Number | Amount of Payment |
|-------|----------------------|-----------------|--------------|-------------------|
| 9     | C.J.                 | 04/15/2015      | 3114         | $750.00           |
| 10    | J.A.                 | 04/30/2015      | 3447         | $750.00           |
| 11    | S.W.                 | 05/01/2015      | 3918         | $750.00           |
| 12    | N.R.                 | 04/16/2015      | 3270         | $500.00           |

All in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

Counts Thirteen and Fourteen
Payment of Illegal Remuneration and
Aiding and Abetting Payment of Illegal Remuneration
(Violations of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.)

38.     Paragraphs 1 through 37 of this Indictment are realleged and incorporated

by reference as though fully set forth herein.

39.     From in or around July 2014, through on or around February 18, 2016, in

the Dallas Division of the Northern District of Texas and elsewhere, **Cesario** and

**Cooper**, aided and abetted by others, and aiding and abetting others, known and

unknown to the Grand Jury, did knowingly and willfully offer to pay and did pay

remuneration directly and indirectly, overtly and covertly, in cash and in kind to

physicians in return for ordering, and arranging for and recommending purchasing, and

ordering prescription compounded drugs, services and items for which payment may be

made in whole or in part under a Federal health care program, namely, TRICARE, each

payment forming separate count:

| Count | Recipient Physician | Date of Payment | Amount of Payment |
|-------|---------------------|-----------------|-------------------|
| 13    | W.E.                | 03/24/2015      | $64,340.00        |
| 14    | W.E.                | 05/12/2015      | $72,685.00        |

All in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

Forfeiture Notice
(18 U.S.C. § 982(a)(7))

40.     Upon conviction of any offense alleged in this Indictment, and pursuant to

18 U.S.C. § 982(a)(7), **Cesario** and **Cooper** shall forfeit to the United States any

property, real or personal, constituting or derived from, directly or indirectly, the gross

proceeds traceable to the commission of the offense including:

(a)     3305 Snidow Court, Plano, Texas;

(b)     4601 Biltmoore Drive, Frisco, Texas;

(c)     1311 Hat Creek Trail, Southlake, Texas;

(d)     700 Garden Court, Southlake, Texas;

(e)     12865 Cannington Cove Terrace, Jacksonville, Florida;

(f)     All funds in JP Morgan Chase (JPMC) Total Business Checking Account
        number XXXXX8801, titled CCMGRX, LLC DBA CMGRX, 5050 Quorum
        Drive, Suite 700, Dallas, Texas 75254, opened 09/10/2014 by Richard R.
        Cesario and John Paul Cooper;

(g)     All funds in a JPMC Platinum Business Checking Account number
        XXXXX9319, titled JRCRX I, LLC, 5050 Quorum Drive, Suite 700, Dallas,
        Texas 75254, opened 01/16/2015 by John Paul Cooper and Richard Cesario;

(h)     All funds in a JPMC Total Business Checking Account number XXXXX6806,
        titled JRCRX II, LLC, 5050 Quorum Drive, Suite 700, Dallas, Texas 75254,
        opened 02/06/2015 by John Paul Cooper and Richard Cesario;

(i)     All funds in JPMC Total checking account XXXXX2098, titled Richard R.
        Cesario POD Diana Gold Cesario, 6700 Creekside Lane, Plano, Texas 75023,
        opened 10/30/2014 by Richard R. Cesario;

(j)     All funds in JPMC Private Client savings account XXXXXX1061, titled
        Richard R. Cesario POD Diana Gold Cesario, 6700 Creekside Lane, Plano,
        Texas 75023, opened 01/14/2015 by Richard R. Cesario;

(k)     All funds in a JPMC Premier Checking Account, number XXXXX4145, titled
        John Paul Cooper and Kathleen D Cooper, 1311 Hat Creek Trail, Southlake,

Texas 76092, opened 08/09/2007 by John Paul Cooper and Kathleen D Cooper, with (JTWROS);

(l)     All funds in Wells Fargo (WF) Account XXXXXX6432, solely owned by Richard R. Cesario, opened October 19, 2010;

(m)     All funds in Bank of Texas Business Advantage account XXXXXX4632 titled JRCRX V LLC, 5050 Quorum Drive, Suite 700, Dallas, Texas 75254, opened 04/11/2015 by Richard Cesario and John Paul Cooper;

(n)     All funds in Bank of Texas Diamond Advantage account XXXXXX5537, titled Richard Robert Cesario, 3305 Snidow Court, Plano, Texas 75025, opened 03/31/2015 by Richard Robert Cesario;

(o)     All funds in Bank of Texas Diamond Advantage account XXXXXX5526, titled The John Paul Cooper Descendants Trust, 700 Garden Court, Southlake, Texas 76092, opened 3/31/2015 with John Cooper as the only authorized signer;

(p)     All funds in a JPMC Business Select Checking Account number XXXXX8180, titled Cooper WCTB LLC, 1311 Hat Creek Trail, Southlake, Texas 76092, opened 01/15/2013 by John Paul Cooper;

(q)     All funds in a JPMC Plus Savings account number XXXXXX4008, titled John Paul Cooper Exempt Lifetime Trust, 1311 Hat Creek Trail, Southlake, Texas 76092, opened 02/20/2013 by John P. Cooper;

(r)     All funds in a JPMC Total Business Checking Account number XXXXX0965, titled CMG RX LLC, 6700 Creekside Lane, Plano, Texas 75023, opened 07/10/2014 by Richard R Cesario and John Paul Cooper;

(s)     All funds in a WF Platinum Savings account number XXXXXX3508, titled John Paul Cooper Exempt Lifetime Trust, 700 Garden Court, Southlake, Texas 76092, opened 5/12/2015 by John P Cooper;

(t)     All funds in JPMC Premier Platinum checking account XXXXX5899, titled Richard R. Cesario, POD Diana Gold Cesario, 6700 Creekside Lane, Plano, Texas 75023, opened 03/13/2015 by Richard R. Cesario;

(u)     All funds in a JPMC Business Checking account number XXXXX5300, titled MBR Empire, LLC, 6700 Creekside Lane, Plano, Texas 75023, opened 01/14/2015 by Richard R. Cesario;

(v)   All funds in Bank of Texas Free Small Business Checking account number XXXXXX0279, titled Freedom From Pain Foundation, 401 N. Carroll Ave., Suite 163, Southlake, Texas 76092, opened 01/29/2015 by Joseph R. King, Thomas C. Kormondy and Jeffrey L. Miller;

(w)   All funds in Bank of Texas Business Advantage account XXXXXX9872, titled Freedom From Pain Foundation, 401 N. Carroll Ave, Suite 163, Southlake, Texas 76092, opened 01/29/2015 by Joseph R. King, Thomas C. Kormondy and Jeffrey L. Miller;

(x)   2015 GMC Yukon, VIN 1GKS2CKJ3FR624877, iridium metallic, registered to Diana G. Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate GJC1726;

(y)   2011 Jaguar Convertible, VIN SAJWA4GB1BLB44314, black, registered to Diana G. Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate DIVAMOM;

(z)   2012 Mercedes-Benz Convertible, VIN WDDKK5KF4CF140951, red/almond, registered to Diana G. Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate FSL9734;

(aa)  2014 Chevrolet Corvette, VIN 1G1YK3D70E5128148, yellow, registered to Richard Robert Cesario and Diana Gold Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate FVP2276;

(bb)  2011 GMC Sierra, VIN 1GT125CG7BF264305, white, registered to Richard Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate HINMTY;

(cc)  2002 Ford Thunderbird, VIN 1FAHP60A52Y113124, yellow, registered to Diana Gold Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate TWETEE;

(dd)  1967 Ford Mustang GT Fastback, VIN 7T02C191773;

(ee)  2009 Charger Playcraft 260 SXI Boat, Hull number RDA12001H809 and Trailer, white/red, registered to Richard R. Cesario, 3305 Snidow Court, Plano, Texas 75025;

(ff)  2016 Cadillac Escalade, VIN 1GYS3KKJ8GR125314, black, registered to John Paul Cooper and Erin Leigh Chylinski, 12865 Cannington Cove Terrace, Jacksonville, Florida, with Florida license plate ESYS24;

(gg)   2006 Hummer H1, VIN 137ZA8437WE178798, gray, registered to John Paul Cooper at 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas license plate H1ALPHA;

(hh)   2012 Maserati QSS, VIN ZAM39JKA6C0065580, black, registered to John P. Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas license plate FKF0241;

(ii)   2006 Ferrari 43S, vehicle identification number (VIN) ZFFEW59AX60146316, black, registered to John Paul Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas license plate FHX4485;

(jj)   2001 Ford Excursion, VIN 1FMSU41F51ED10121, orange, registered to John P. Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas license plate PINKYS1;

(kk)   2008 Porsche 911, VIN WP0CD29918S788270, black, registered to John P. Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas license plate FNN9966;

(ll)   2002 38' Fleetwood Southwind Motorhome, VIN 1FCNF53S710A18284, registered to Diana L. Gold Cesario, 3305 Snidow Court, Plano, Texas 75025, with Texas license plate 359089D;

(mm)   1998 Calumet Coach MMS, VIN 44KFB6284WWZ18697, expired registration in the name of Philip S. Morton Family Dentistry PLLC, in Van Buren, Arkansas, with Arkansas license plate B298378;

(nn)   2008 Mercedes Benz S5F, VIN WDDNG71X08A225634, registered to Kathleen Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas license plate DVX6287;

(oo)   2011 Aston Martin, VIN SCFHDDAJXBAF01128, black, registered to John P. Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas license plate CMGRX;

(pp)   2007 Jeep Wrangler, VIN 1J4GA39197L201522, blue, registered to Richard Cesario, 6700 Creekside Lane, Plano, Texas 75023, with Texas license plate FLL1842;

(qq)   2008 Infiniti QX56, VIN 5N3AA08D38N913863, white, registered to Richard Cesario, 6700 Creekside Lane, Plano, Texas 75023, with Texas license plate FDG6076;

(rr) 2004 Mercedes-Benz SL, VIN WDBSK75FX4F071006, silver, registered to Richard Cesario, 6700 Creekside Lane, Plano, Texas 75023, with Texas license plate FKD6784;

(ss) 2006 Freightliner Pick up, VIN 1FVAFCDK76HW89341, yellow, registered to John P. Cooper, 700 Garden Court, Southlake, Texas 76092, with Texas license plate P2XL;

(tt) 2009 Cadillac Escalade, VIN 1GYFK26259R194472, black, registered to John Paul Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas license plate BCB6601; and

(uu) 1998 Hummer H1, VIN 137ZA8437WE178798, red, registered to John Cooper, 1311 Hat Creek Trail, Southlake, Texas 76092, with Texas license plate CMGRX.

41.     The above-referenced property subject to forfeiture includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense.

### Substitute Assets

42.     Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above-described property subject to forfeiture, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described property subject to forfeiture.

TRUE BILL.

A TRUE BILL.

_____
FOREPERSON


JOHN R. PARKER
UNITED STATES ATTORNEY

_____
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8604
Facsimile:  214-659-8802
douglas.brasher@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

RICHARD ROBERT CESARIO (01)
JOHN PAUL COOPER (02)

INDICTMENT

18 U.S.C. § 1349
Conspiracy to Commit Healthcare Fraud
18 U.S.C. §§ 1347 and 2
Healthcare Fraud and Aiding and Abetting Health Care Fraud
42 U.S.C. § 1320a-7b(b)(1)
Receipt of Illegal Remuneration
42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2
Payment of Illegal Remuneration and
Aiding and Abetting Payment of Illegal Remuneration
Forfeiture
14 Counts

A true bill rendered

-------------------------------------------------------------------------------------

DALLAS                                                                    FOREPERSON

Filed in open court this 18th day of February, 2016.

-------------------------------------------------------------------------------------

                                                                              Clerk

**Warrant to be Issued**

-------------------------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending
2/18/16